**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| Sherryl Magwood Haselden, ) | C/A No. 9:12-0872-CMC-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **OPINION & ORDER** |
| Carolyn W. Colvin, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Through this action, Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff appealed pursuant to 42 U.S.C. § 405(g). The matter is currently before the court for review of the Report and Recommendation ("Report") of Magistrate Judge Bristow Marchant, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rules 73.02(B)(2)(a) and 83.VII.02, *et seq.*, D.S.C.

The Report, filed on April 8, 2013, recommends that the decision of the Commissioner be affirmed. Dkt. No. 18. Plaintiff filed objections to the Report on April 24, 2013 (Dkt. No. 20), to which the Commissioner replied on May 13, 2013 (Dkt. No. 21). For reasons stated below, the court declines to adopt the Report, reverses the Commissioner's decision, and remands the matter for further proceedings.

---

[1] Carolyn W. Colvin is substituted as the Defendant in this action because she became the Acting Commissioner of Social Security on February 14, 2013. *See* Dkt. No. 42 at 1 n.1. As provided in the Social Security Act, "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." 42 U.S.C. § 405(g). For ease, the court refers to the Acting Commissioner as the Commissioner.

**STANDARD**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The court reviews only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence and reached through application of the correct legal standard. *Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). "From this it does not follow, however, that the findings of the administrative agency are to be

mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## DISCUSSION

The Report recommends affirming the Commissioner's decision to deny Plaintiff benefits. Plaintiff objects to the Report's recommendation, arguing that the ALJ's decision is not supported by substantial evidence because he (1) failed to properly analyze whether Plaintiff meets Listing 12.05C; (2) failed to consider the combination of Plaintiff's impairments; (3) improperly discounted Plaintiff's credibility; and (4) failed to consider all of Plaintiff's impairments in assessing her residual functional capacity ("RFC"). The court considers Plaintiff's objections below.

**Listing 12.05C.** To meet Listing 12.05C for mental retardation, a claimant must satisfy the introductory paragraph to Listing 12.05, which requires that the claimant have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before the age of 22. 20 C.F.R. Pt. 404, Subpart P, App. 1, Listing 12.05. *See also Hancock v. Astrue*, 667 F.3d 470, 473 (4th Cir. 2012). The claimant must also satisfy the two additional requirements under paragraph C: (1) a "valid verbal, performance, or full scale IQ of 60 through 70," and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.*

In step three of the sequential evaluation process, the ALJ's findings on Listing 12.05C are as follows:

> Finally, the "paragraph C" criteria of Listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. As discussed above, the claimant's long history of regular employment, along with her extensive activities of daily living, support a finding that the claimant does not exhibit deficits in adaptive functioning that would support disability under Listing 12.05C and therefore I find that the criteria of "paragraph C" are not met.

Tr. 369. Plaintiff argues that she satisfies Listing 12.05C because she has a full-scale IQ of 69 and severe impairments that impose "an additional and significant work-related limitation of function." Although the ALJ stated in step three that Plaintiff did not have an IQ of 60 through 70, the ALJ referenced Plaintiff's full-scale IQ score of 69 when explaining Plaintiff's RFC. Tr. 370. The ALJ also stated in step three that Plaintiff has no "impairment imposing an additional and significant work-related limitation of function." Tr. 371. However, in addition to borderline intelligence, the ALJ found that Plaintiff has the severe impairments of seizure disorder, depression, and a history of substance abuse. Tr. 367. The ALJ also found that Plaintiff is unable to perform any past relevant work. Tr. 372. The finding that Plaintiff's severe impairments render her unable to perform her past relevant work indicates that Plaintiff has "a physical or other mental impairment imposing additional and significant work-related limitation of function." *Rainey v. Heckler*, 770 F.2d 408, 410-11 (4th Cir. 1985) (finding that claimant cannot perform past relevant work "establishes the existence of an additional and significant work-related limitation of function within the meaning of § 12.05 C.").

To the extent the ALJ based his Listing 12.05C determination on a failure to satisfy the requirements of paragraph C – an IQ-score of 60 through 70 and the presence of another impairment – that determination is not supported by substantial evidence. The Report, however, concludes that the ALJ's errors as to paragraph C are harmless because the ALJ also found that the introductory

paragraph of Listing 12.05 – deficits in adaptive functioning – is not met. The Report concludes that the ALJ's finding that Plaintiff has no deficits in adaptive functioning is supported by substantial evidence. The court disagrees.

"Deficits in adaptive functioning can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 Fed. Appx. 214 (4th Cir. Feb. 24, 2012) (citing *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002)). Here, the ALJ found that Plaintiff's "long history of regular employment" and "extensive activities of daily living" indicate that Plaintiff has no deficits in adaptive functioning to meet the introductory paragraph of Listing 12.05. In step three, the ALJ noted that Plaintiff "has a greater than 30-year work history as a dock worker, security guard, and housekeeper." Tr. 369. Also in step three, the ALJ listed the following as Plaintiff's activities of daily living: "In activities of daily living, the claimant has mild restriction. She is able to care for her personal hygiene, cook, clean, and perform yard work. (Exhibit 6E). However, she does not drive a car." Tr. 368.[2] The ALJ found that Plaintiff "watches television, reads, and sews. She is able to pay bills, count change, handle a savings account, and use a checkbook." Tr. 368.

---

[2] When determining Plaintiff's RFC later in his decision, the ALJ stated:

> Moreover, the claimant continues to engage in a wide variety of activities of daily living. She is able to rake her yard, wash laundry and dishes, cook large meals, and care for her personal hygiene and grooming. (Exhibit 6E). She walks to the boat docks to visit friends, which indicates that there are no significant limitations on her ability to walk. (Exhibit 6F). This high level of functional ability on a day-to-day basis is inconsistent with disabling mental health impairments.

Tr. 371.

Plaintiff argues that the ALJ ignored the fact that Plaintiff's "long history of regular employment" consisted of twenty-nine years working at the boat docks in her parents' business, and two short-term jobs as a security guard (checking cars and trucks through a security gate) and a house cleaner. Testimony indicates that Plaintiff's parents accommodated Plaintiff's mental impairments in her job at the docks and that she was fired when the family business was transferred to other owners after her parents' deaths. Tr. 400-01. Plaintiff also argues that her activities of daily living are more limited than the ALJ found. Plaintiff has presented testimony, from herself and her cousin, that she does not pay her own bills, and that her cousin buys her groceries. Tr. 386, 399. Although Plaintiff self-reported that she reads, Dr. Saylor, who performed a consultative psychological exam, stated that Plaintiff reads on a third-grade level and cannot comprehend a newspaper. Tr. 296. Dr. Saylor also indicated that Plaintiff would "appear to have difficulty managing benefits" and recommended that someone be appointed to manage any funds awarded. Tr. 297.[3] Testimony indicates that Plaintiff was in special education classes and dropped out of school in the ninth grade.

The ALJ mentioned some, but not all, of this evidence at various stages of the sequential evaluation process. However, the ALJ did not explain how this evidence affected his finding that Plaintiff had no deficits in adaptive functioning in step three.[4] In light of the ALJ's error in

---

[3] The ALJ relies on certain portions of Dr. Saylor's report (6F) throughout his decision. *See* Tr. 367, 368, 371.

[4] When analyzing her RFC, the ALJ appears to conduct a second Listing 12.05C analysis:

The claimant alleges that she is impaired by a learning disability evidenced by a full-scale IQ score of 69 achieved during her consultative examination. This score placed her in the mild range of mental deficiency. (Exhibit 6F). The claimant further alleges that she has a ninth grade education and attended special education

6

evaluating whether Plaintiff meets the paragraph C requirements of Listing 12.05C, along with the lack of explanation as to evidence that may support a finding of deficits in adaptive functioning in the Listing 12.05C analysis, the court reverses the Commissioner's decision and remands the matter to properly analyze whether Plaintiff meets Listing 12.05C.

**Other Issues.** Plaintiff raised three additional allegations of error: (1) the ALJ failed to consider the combination of her impairments in determining whether she was disabled, as required by *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); (2) the ALJ erred in discounting her credibility based on inconsistencies in her testimony by ignoring the possibility that her mental impairments "may account for such inconsistencies;" and (3) the ALJ's determination of her RFC is not supported by substantial evidence.[5] The court need not address Plaintiff's remaining allegations

---

classes (Exhibit 16F). The claimant alleges that, this, in conjunction with her other impairments justifies a finding of disabled under Listing 12.05C. However, the claimant's other impairments do not impose additional and significant work related functions, and in view of her regular employment, and no evidence in the record of deficits in adaptive functioning, there is no basis for finding that her condition meets Listing 12.05.

Tr. 371. Here, the ALJ repeats his error that Plaintiff's other impairments do not impose additional and significant work related functions. Also, contrary to the ALJ's finding, there is evidence of deficits in adaptive functioning. To the extent that the ALJ rejected that evidence, the ALJ did not properly explain why that evidence was rejected.

[5] Specifically, Plaintiff contends that the ALJ ignored Plaintiff's "treatment for seizures; her long history of accommodated employment by her family; her constricted lifestyle and need for substantial everyday support from her family, throughout her life; her limited memory and comprehension." Dkt. No. 20 at 4. Plaintiff also highlights that the ALJ found in his first decision that Plaintiff should be restricted to work with limited social interactions, and limited to work involving simple, routine, repetitive tasks. Those restrictions were not included in his second decision. Neither was an explanation as to why Plaintiff's work should not be restricted in these ways.

of error as they may become moot on remand.[6]

## CONCLUSION

For reasons set forth above, the court declines to adopt the Report and Recommendation of the Magistrate Judge. The court reverses the decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), and remands the case to the Commissioner for further proceedings consistent with this order.

**IT IS SO ORDERED.**

S/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
July 22, 2013

---

[6] The court notes that the ALJ found that Plaintiff's seizure disorder has not required medication. Tr. 368 ("claimant's seizures . . . have not required medication"). The medical records indicate that Plaintiff has been prescribed Dilatan for her seizures. Tr. 354, 361. Testimony and medical records also indicate that Plaintiff did not always take the medication due to lack of funds. In fact, when analyzing Plaintiff's RFC, the ALJ acknowledged Plaintiff's testimony that "she is out of her seizure medication currently." Tr. 370.